### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KWENTEL BROOMFIELD,

       Plaintiff,

    v.

CORRECTIONS OFFICER BAILEY, et al.,

       Defendants.

Case No. 1:23-cv-108

McFarland, J.
Bowman, M.J.


### REPORT AND RECOMMENDATION

On August 30, 2022, Plaintiff Kwentel Broomfield initiated this pro se civil rights lawsuit against eight individual Defendants employed at the Southern Ohio Corrections Facility ("SOCF").[1] In his amended complaint, Plaintiff alleges that Defendants violated the Eighth Amendment by failing to protect him from an attack by another prisoner on May 4, 2022, and violated the First Amendment by retaliating against him for filing grievances. Following discovery, Defendants moved for summary judgment. In addition to Defendants' pending motion, Plaintiff has moved to file a second amended complaint.

For the reasons that follow, the undersigned recommends that Defendants' motion for summary judgment be GRANTED only in part and that Plaintiff's motion to further amend his complaint be DENIED.

---

[1]Plaintiff was transferred to the Toledo Correctional Institution from SOCF during the course of this litigation. All underlying events giving rise to this lawsuit occurred at SOCF.

## I.    Standard of Review

When reviewing a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to survive summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The court determines whether the evidence requires submission to a jury, or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Rule 56(c) provides that the non-movant must "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine dispute of material fact, or otherwise "show[ ] that the materials cited" by the moving party do not demonstrate that no disputed issue of material fact exists. Fed.R.Civ.P. 56(c)(1). Thus, the non-moving party must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita.*, 475 U.S. at 587 (citation omitted).

In general, a plaintiff "cannot rest on the mere allegations of the pleading." *Id.* But a limited exception to that rule applies when a plaintiff files a verified complaint "under penalty of perjury." A verified complaint is considered to be evidence, equivalent to a declaration or affidavit as to any facts asserted based on personal knowledge that would be admissible in evidence, though not as to legal conclusions to be drawn from those facts. *See Healthy Advice Networks, LLC v. Contextmedia, Inc.*, No. 1:12-cv-610-SJD, 2014 WL 5588444, at *4 (S.D. Ohio Nov. 3, 2014).

## II.    Analysis of Pending Summary Judgment Motion

### A.   The Parties' Respective Submissions of Argument and Evidence

Defendants filed their motion for summary judgment on August 1, 2024, supporting it with seven evidentiary exhibits, including the Declarations of Defendants Dotson, Hale,

McAllister and Bauer,[2] a Use of Force Report from May 4, 2022, a property record dated May 29, 2022, and the Affidavit of non-party Kevin Parker. Plaintiff's response consists of 56 disjointed pages, including non-consecutive pages of a handwritten, single-spaced memorandum. (*See* Doc. 37, Memo. in Opp. at pp. 1, 2, 4, 6, 8, 10, 12, 14). Although 48 pages of exhibits are included with that memorandum, the exhibits are not clearly identified and Plaintiff fails to cite to most of them. Some are illegible; others are duplicates of Defendants' exhibits. The undersigned has done her best to decipher handwritten pages and to make sense of the jumbled assortment. However, "the Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Comm'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007)).

In a reply memorandum, Defendants point out that most of the exhibits included with Plaintiff's memorandum in opposition appear to be unrelated to the claims asserted in Plaintiff's complaint.[3] Defendants further argue that any unsworn allegations in Plaintiff's memorandum, unsupported by evidence, are insufficient to create a genuine issue of material fact on summary judgment.[4] But Defendants' focus on Plaintiff's memorandum in opposition ignores the fact that Plaintiff signed his amended complaint

---

[2]Plaintiff's complaint identifies Bauer's surname as "Bauers" and occasionally misspells the surnames of other Defendants. For consistency, this Report and Recommendation adopts the spelling used by the Defendants.

[3]In response to Defendants' reply, Plaintiff filed a short surreply. (Doc. 39). The undersigned declines to consider the surreply, which is not authorized by the Federal Rules of Civil Procedure and was filed without leave of Court.

[4]For example, in his memorandum in opposition, Plaintiff repeatedly refers to DVR security footage that he maintains will support his claims. Plaintiff also refers to statements allegedly reflected in relevant grievance documents. But most of the referenced grievances have not been filed of record, and no video footage has been filed.

with the following Declaration: "I, Kwentel Broomfield, do hereby Declare, Under Penalty of Perjury that the Foregoing Statement of Claim is True and Correct." (Doc. 7 at 9, PageID 84).

Plaintiff's verified complaint is equal to a declaration or affidavit as to any facts asserted based on personal knowledge that would be admissible in evidence.[5] *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (prisoner's similar declaration was "verified within the language of 28 U.S.C. § 1746." ). As such, facts alleged in the verified complaint may be sufficient to defeat summary judgment. *See e.g.*, *El Bey v. Roop,* 530 F.3d 407, 414 (6th Cir.2008) (reversing where trial court failed to consider facts alleged in verified complaint); *Rodgers v. Hawley,* 14 Fed. Appx. 403, 409 n. 2 (6th Cir.2001); *Brown v. Waters,* No. 91-2104, 959 F.2d 233 at *2 (Table) (6th Cir. Apr. 7, 1992) ("Although unsworn, the verified complaint is sufficient to defeat defendants' motion for summary judgment on this issue *because [the plaintiff] signed the document under penalty of perjury."* (emphasis added)); *Perkins v. McCarthy*, No. 2:11-CV-23, 2013 WL 5329849, at *6 (W.D. Mich. Sept. 23, 2013) (holding that a prisoner may show the existence of a genuine issue of material fact through a verified complaint).

## B. Findings of Fact[6]

### 1. The Eighth Amendment Failure-to-Protect Claim

Plaintiff alleges that on May 4, 2022, Correction Officers Bailey, Dotson and Hale failed to protect him when, during medication distribution, another inmate ("Leeper")

---

[5]For instance, allegations in Plaintiff's complaint that purport to be verbatim statements made to Plaintiff by Defendants would be admissible under Fed. R. Evid. 801(d)(2)(A).
[6]Applying the requisite standard of review, the Findings of Fact are based on the factual statements asserted in Plaintiff's verified complaint, the evidentiary exhibits submitted by Defendants, and additional relevant exhibits submitted by Plaintiff in his response.

attacked Plaintiff using a homemade knife. (Doc. 7, PageID 80). Plaintiff sustained "substantial injuries to the [f]ace and neck, nerve damage and loss of blood" from the attack. (Doc. 7, PageID 80). Plaintiff alleges that on some undisclosed date prior to the attack, Leeper vowed to kill Plaintiff "on sight" after some earlier altercation. (Doc. 7, PageID 78). Notably, the record does not contain the date of that earlier altercation or threat, and Plaintiff does not allege that any Defendant was aware of it.

On May 4, 2022, Plaintiff was placed in a cell adjacent to Leeper's cell. At that time, Leeper "resumed hostilities with the Plaintiff, in the [f]orm of threats, which [led] to boisterous arguing and the throwing of [f]eces and urine, and spitting." (*Id*., PageID 79). Defendant Bailey, who was working first shift, observed the inmates' behavior on camera from his post but did nothing to curtail it beyond verbally chastising the inmates: "If y['all ain't going to fight, then quit throwing shit and spitting at each other." (*Id*.)

When second shift began and C/Os Dotson and Hale "took post," Plaintiff alleges that they were "told of the earlier events." Both Hale and Dotson deny that allegation, attesting that they had no knowledge of, and were not "made aware of" any prior incidents of "any threats or possible incidents" between Plaintiff and Inmate Leeper prior to the altercation on May 4, 2022. (Doc. 31-1, ¶8; Doc. 31-2, ¶ 8). Still, at one point, Defendant Hale turned off his body camera and approached Plaintiff to state that he "knew what was going on" and encouraged Plaintiff to fight Leeper, but to "get out of the way when the response comes" because the correctional officers did not like Leeper and planned to "f--- him …up." (Doc. 7, PageID 80). Dotson also verbally encouraged Plaintiff to "kick his [Leeper's] ass" if he had the chance. (*Id*.) Plaintiff alleges that at pill call that evening, he

-6-

stepped out of his cell along with Leeper, and "attempted to walk away in retreat" after seeing Leeper brandish a homemade knife but was unable to escape the attack. (*Id.*)

When the physical fight between the inmates began, Defendant Dotson performed his duties in the control booth while other officers responded to separate the two. (Doc. 31-1, ¶7, PageID 229). Officer Chad Hale deployed his pepper spray to halt the altercation after the inmates ignored his verbal commands to stop. (Doc. 31-2, ¶7, PageID 231). Following the altercation, Plaintiff was escorted to the medical unit where he was treated for his injuries.

### 2. The First Amendment Retaliation Claim

SOCF has a three-step administrative grievance process. Plaintiff began that process by filing an informal complaint ("ICR") regarding the May 4 incident. He subsequently filed a formal grievance that went "unanswered" for many days. (Doc. 7, PageID 81). On July 7, 2022, Plaintiff contacted Defendant Inspector Vickers, who was in charge of review, to inquire and/or complain about the delay in response. Plaintiff made contact with Vickers through a written "kite," a type of informal grievance. (*Id.*) The next day, Plaintiff was taken to segregation by Defendant Bauer who stated: "You can't be threatening the Inspector. Vickers said to come get you, cause you threatened him." (*Id.*)

During a subsequent "pack up" of Plaintiff's property by unidentified officers that corresponded with Bauer's transport of Plaintiff to segregation on July 8, 2022, Plaintiff alleges that his belongings, including a television, were "destroyed and misappropriated," a fact discovered when he returned to his regular housing unit (*Id.*, PageID 81-82). Plaintiff contacted Deputy Warden Davis on July 17, 2022 but she did not address the issue. (*Id.*, PageID 82).

-7-

After being placed in segregation by Bauer, Plaintiff complained to the warden that he had been punished without first being issued a conduct report. Vickers later saw him in the unit and stated: "Oh. This must be some type of mis-understanding. Just leave the Grievance alone, we'll put you back in the same block, same cell like nothing happened, huh?" (Doc. 7, PageID 81).[7]

On July 18, 2022, Defendant McAllister was tasked by Vickers with investigating Plaintiff's claim of a lost or damaged television during the July pack out. (Doc. 31-4, ¶5). McAllister learned that the television about which Plaintiff had made a complaint belonged to another inmate. Citing the possession of another inmate's property as a rule violation, McAllister issued a Conduct Report and took Plaintiff to segregation. (*Id.*, ¶7).

Plaintiff alleges that during the investigation, McAllister told him he would "get you another T.V. but you've gotta leave all this alone," and then stated that "Vickers wants to talk to you." (Doc. 7, PageID 82). Over a speaker phone in the presence of McAllister, Plaintiff alleges that Vickers stated:

> Now you see all this stuff I'm doing for you? I've got you a T.V. Now I need you to do something for me. You gotta crawl under a rock, you gotta stop having your people calling (Pamela Piper). Columbus needs to stop calling me about you. And I need you to leave that Failure to protect grievance, and the ICR you wrote on C/O Gillam and C/O Richardson alone.[8]

(*Id.*) When Plaintiff said "I can't do that sir," Vickers warned: "you want me to rewind all this and give you a hard time?" (*Id.*) Plaintiff then told Vickers "that he would appreciate it if he would respond to the grievance which was 40 days over[]due." (*Id.*) Vickers

---

[7]It is unclear whether Vickers' comment referred to the kite Plaintiff had filed against Vickers for the delay in responding to grievance(s) over the May 4 attack, or Plaintiff's complaint to the warden about Vickers having placed him in segregation.

[8]Plaintiff alleges that his property was previously damaged on a prior (unidentified) occasion, and that Plaintiff filed a grievance on June 1, 2022 concerning that issue against Defendant Gillum. Id. PageID 80).

instructed McAllister to return Plaintiff to segregation. After McAllister complied, Vickers went to the strip out cages while Plaintiff was being processed and stated: "[Y]ou should've worked with me Broomfield. You're going to regret this." (*Id.*, PageID 83).

The record does not contain any testimony from Vickers. But McAllister attests: "At no time did I witness Inspector Vickers telling Inmate Broomfield that if he cooperated and dropped his grievances things would be easier for him." (Doc. 31-4, PageID 259-260).

### C. Conclusions of Law

#### 1. Defendant Davis is Entitled to Summary Judgment

The complaint includes no allegations against Defendant Cynthia Davis regarding any failure to protect Plaintiff from the May 4 attack, nor does it include allegations that would give rise to liability for retaliation under the First Amendment. Instead, Plaintiff's only allegation is that he contacted Defendant Davis on July 17 2022 after discovery of his broken and missing property and "explain[ed] the events" in order to seek administrative assistance, but that she "did not address the issue." (Doc. 7, PageID 82). Plaintiff's allegation about a single conversation with Davis on July 17 fails to provide sufficient factual detail to state a First Amendment retaliation claim against her. Therefore, Defendant Davis is entitled to judgment as a matter of law.

#### 2. Defendant Bailey is Entitled to Summary Judgment

Plaintiff accuses Bailey, Dotson and Hale of failing to prevent or intervene in the May 4 altercation, and instead "promot[ing] the inmate on inmate attack." (Doc. 7, PageID 80). Defendant Bailey persuasively argues he is entitled to summary judgment on grounds that Plaintiff has failed to comply with a procedural requirement of the Prison Litigation Reform Act of 1995 ("PLRA") that requires prisoners to fully exhaust available

institutional remedies prior to filing suit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983 (2002). Such exhaustion is "mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 211, 127 S. Ct. 910 (2007). The PLRA requires "proper exhaustion of administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*, 548 U.S. 81, 84, 90-91, 126 S. Ct. 2378 (2002). The exhaustion requirement's goals can be achieved "only if the prison grievance system is given a fair opportunity to consider the grievance." *Id.* at 82. "That cannot happen unless the grievant complies with the system's critical procedural rules." *Id.* If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, then dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.*, 84 Fed. Appx. 526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a) and *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 204).

Ohio inmates are required to comply with a 3-step administration grievance process in order to fully exhaust their administrative remedies. As part of that process, a plaintiff must include in the initial administrative complaint(s) the names of all personnel giving rise to the complaint (or a physical description of any John Doe), and specific information concerning the actions of said personnel. *See* Ohio Admn. Code 5120-9-31(J). Here, Defendant Bailey asserts that Plaintiff submitted no administrative complaints against him or complaining of his conduct on May 4. Although none of the parties have filed copies of the relevant grievances, Defendant Bailey's argument is supported by the Affidavit of the current Inspector of Institutional Services for SOCF. Mr. Parker confirms that institutional records show Plaintiff "did not file any informal complaints against CO Bailey" between March and November 2022. (Doc. 31-5, ¶9).

In response, Plaintiff argues that he should be deemed to have fully exhausted because his grievance against Defendants Hale and Dotson concerning the May 4 attack included some reference to Bailey's name. (Doc. 37, PageID 287). Because the relevant grievance has not been filed of record, Plaintiff's argument is unsupported. In short, Defendants' evidence that Plaintiff has failed to exhaust as to Defendant Bailey remains uncontested. Plaintiff alternatively urges this Court to hold Bailey liable on the merits for his "dereliction of duty" because he issued only a verbal warning when stronger discipline might have prevented the attack. (Doc. 7, PageID 79). But based on the undisputed evidence that Plaintiff did not administratively exhaust his claims against that Defendant, Bailey is entitled to summary judgment.

### 3.   Defendants Dotson and Hale are not Entitled to Summary Judgment

Defendants Dotson and Hale argue that they also are entitled to summary judgment based on the merits of Plaintiff's failure-to-protect claim. The undersigned disagrees. The seminal case setting forth the standard for Plaintiff's claim is *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994). In *Farmer*, the Supreme Court held that the Eighth Amendment imposes a duty to take "reasonable measures to guarantee the safety of the inmates," which includes "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 832-833 (internal citation omitted); *see also Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). To prove his failure-to-protect claim, Plaintiff must submit evidence to satisfy both an objective and subjective component. Under the objective component of the claim, the plaintiff first must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Here, Plaintiff has alleged that he was placed in a cell next to an inmate who verbally threatened to kill Plaintiff, and that two inmates were freely allowed to engage in increasing hostilities prior to being encouraged to engage in physical violence.

Defendants argue that they are entitled to judgment because Plaintiff cannot prove the subjective component of his claim – that each Defendant acted with the requisite "deliberate indifference" equivalent to an intent to punish inmate health or safety. *Id.; see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). To establish that subjective component, a plaintiff must show that the defendant official knew of and disregarded an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837.

-12-

It is true that Plaintiff does not allege that any Defendant had knowledge of the contraband knife that Leeper possessed, or of the threat allegedly made by Leeper on an unidentified date prior to May 4, 2022. And Plaintiff does not dispute that Defendants Dotson and Hale did what they could to prevent injury to Plaintiff once the attack began. But Plaintiff's primary claim here is not what the Defendants did once the altercation began, but what they failed to do to prevent it. Specifically, Plaintiff's verified complaint attests as follows:

> Having been told of the earlier events by 1st Shift Officer [Bailey], Officer [Hale] approached the Plaintiff's cell during dinner on 5/4/22, while the majority of K-8 inmates were away at chow movement. At this time Officer [Hale] deactivated his body worn camera, and stated that he "knew what was going on," and that he didn't – "like" Inmate Leeper because Inmate Leeper had previously [thrown] feces on two (2) other Corrections Officers. Officer [Hale] then stated: "Broomfield, you should kick his, dude I won't say nothing if you go in his cell, or he comes to yours. If you get caught, just get out [of] the way when the response comes, cause we're going to fuck him (Inmate Leeper) up!" Approximately an hour after this, Officer Dotson made rounds (security check), and stopped at Plaintiff's cell location and inquired "You got 'em at pill call Broomfield? If so, you better kick his ass, everybody knows what's going on Bro."

(Doc. 7, PageID 79-80, minor corrections to grammar and punctuation for readability).

Construed liberally, Plaintiff's verified factual allegations create a reasonable inference that both Defendants Dotson and Hale became aware of an ongoing altercation between Plaintiff and Leeper during their shift,[9] that each verbally encouraged Plaintiff to further engage Leeper and to "kick his ass," and that they directly stated or strongly implied that they would turn a blind eye if Plaintiff engaged in a physical fight. Defendants

---

[9]Precisely how Dotson and Hale became aware of the hostilities between the two inmates (whether by being told or by observation) is not material. Although Plaintiff insists that Bailey told the incoming second shift officers, that particular allegation is inadmissible hearsay that need not be considered because Plaintiff does not lay a foundation as to any personal knowledge of the officers' communications during the shift change.

Dotson and Hale contradict Plaintiff's allegations and deny knowledge of any threat. (Doc. 31-1, ¶8, Doc. 31-2, ¶ 8). But Defendants' denials may not be credited over the statements made by Plaintiff in his verified complaint. Given competing evidence that would allow a reasonable jury to find in Plaintiff's favor on the issue of Dotson and Hale's subjective knowledge that Leeper and Plaintiff were about to engage in a physical altercation on Defendants' watch, the undersigned recommends denial of summary judgment on Plaintiff's claim against them.

### 4. Defendant Gillum is Entitled to Summary Judgment

Plaintiff alleges that Defendant Gillum is liable for retaliating against Plaintiff in violation of the First Amendment. Such a claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir., 2024) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff satisfies the first element because he filed one or more grievances relating to the May 4 attack. His allegations of Gillum's destruction of Plaintiff's property arguably satisfy the second element. Defendant contests whether the TV screen was cracked, but a factual dispute remains on that issue.[10]

---

[10]Defendant points to a property slip dated May 29 that reflects the TV screen was cracked when Defendant Gillum packed it up. (Doc. 31-6). But Plaintiff's signature is missing from that pack-out slip, and Defendant does not dispute that Plaintiff filed a grievance on June 1 to complain about the damage. Neither Gillum nor Plaintiff have provided sworn testimony on the issue; the pack out slip and the grievance form are unsworn. Therefore, whether Gillum damaged Plaintiff's property on May 29 remains a disputed issue of material fact.

But Gillum wins summary judgment based on the third element – causal connection. To establish the third element of his claim, Plaintiff must show both

> (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citation and internal quotation marks omitted). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant."

*Richards v. Perttu*, 96 F.4th at 919 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)).

Here, Plaintiff does not even allege, much less offer evidence, to show a causal relationship between Plaintiff's protected conduct and the alleged damage to Plaintiff's TV on May 29, 2022. Gillum was not involved in the May 4 incident, or the subject of any other grievances prior to May 29. In fact, Plaintiff's reference to Gillum almost appears as an afterthought in his complaint. It is only in the context of relating his allegations against Vickers and McAllister, wherein he is complaining about damage to a second television during a pack out in July 2022 that Plaintiff alludes to Defendant Gillum doing "the same thing to Plaintiff's property" the previous May.[11] He later clarifies that the earlier incident occurred on May 29, 2022. (Doc. 37, PageID 326, copy of June 1, 2022 ICR that accuses Gillum of mishandling Plaintiff's property during a pack out and threatening to break Plaintiff's television).

---

[11]The complaint states that at least two television screens were cracked or broken on different occasions (May 29, 2022 and sometime in July 2022). Plaintiff allegedly owned the TV at issue in May, but the second TV was on loan to him from another inmate.

The record is devoid of evidence that would support a reasonable inference that Gillum was substantially motivated on May 29 to punish Plaintiff for a prior exercise of his First Amendment rights.[12] At the summary judgment stage, a prisoner must come forth with some evidence of a retaliatory motive - conclusory allegations are insufficient. *Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010). Because there is insufficient evidence to present to a jury, Gillum is entitled to summary judgment. *See*, *generally*, *Heyward v. Cooper*, 88 F.4th 648, 657 (6th Cir. 2023) (dismissing inmate's conclusory claim that defendant's actions were motivated at least in part by plaintiff's grievances).

### 5.  Defendant Bauer is Entitled to Summary Judgment

For similar reasons, Defendant William Bauer is entitled to summary judgment. Plaintiff alleges that on July 8, 2022, Bauer escorted him to segregation at Vickers' direction after Vickers told Bauer that Plaintiff had threatened Vickers. (Doc. 7, PageID 81). Defendant Bauer agrees with Plaintiff's account; he placed Plaintiff in segregation based on Vickers' statement that Plaintiff had threatened him. (Doc. 31-7). At the time, Bauer was unaware of any grievances that Plaintiff had filed against Bauer or of any complaints Plaintiff had made about the alleged destruction of Plaintiff's property.[13] (Doc. 31-7, ¶¶6-7).

---

[12]In his response in opposition to summary judgment, Plaintiff alleges for the first time that Gillum was motivated to break Plaintiff's TV in May because Plaintiff had been placed "on constant watch" which staff do not like. Plaintiff alleges that on an unspecified earlier date, Gillum had threatened to "fuck up my pack up" if Plaintiff was placed on constant watch. Absent evidence, none of those new allegations are sufficient to defeat summary judgment. In any event, it is not at all clear that the involuntary placement of Plaintiff on constant watch constitutes protected conduct that would support a retaliation claim.

[13]Bauer does not state whether he was aware of Plaintiff's grievances against others. But even if Bauer was aware of grievances against other SOCF officials, he would still be entitled to summary judgment absent any evidence that he was motivated by retaliatory animus. *See*, *generally, Spies v. Voinovich*, 48 Fed. Appx. 520, 524-25 (6th Cir. 2002) ("an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory") (internal quotation marks and citation omitted).

Plaintiff points to the temporal proximity between Plaintiff's complaint to Vickers on July 7 about his delay in responding to Plaintiff's grievance(s) and the order for Bauer to place Plaintiff in administrative segregation. But that circumstantial evidence only speaks to *Vickers*' possible motivation - not to any retaliatory motive by *Bauer*. Plaintiff insists that Bauer is "guilty by association." (Doc. 37, PageID 295). But neither Bauer's words nor his actions give rise to an inference that Bauer was "substantially motivated" by retaliation. In the absence of any genuine issue of material fact regarding his lack of retaliatory motivation, Bauer is entitled to summary judgment. *See Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) (affirming grant of summary judgment to a defendant because accusation that he was a "cohort" was insufficient absent specific evidence to show what he personally did).

### 6. Defendants McAllister and Vickers are not Entitled to Summary Judgment

Like other Defendants, McAllister and Hale do not dispute Plaintiff's ability to satisfy the protected conduct element. But with respect to the "adverse action" element, they argue that Vickers' threat was overly vague. Alternatively, they contend that Plaintiff cannot prove the third element of his claim (retaliatory intent). Based on the evidence presented, however, a reasonable jury could find for the Plaintiff and against both Defendants.

To recap, on July 7, 2022, Plaintiff submitted a written "kite" to complain about Vickers' delay in responding to Plaintiff's earlier grievance(s) concerning the May 4 attack. The very next day, Vickers instructed Defendant Bauer to transport Plaintiff to segregation based on an alleged threat to Vickers' safety – a threat that Plaintiff denies. Bauer had no personal knowledge of any threat beyond what Vickers related. Although Vickers later

told Plaintiff that it was all a "misunderstanding," circumstantial evidence could support a finding that Vickers issued the disciplinary order in retaliation for Plaintiff's complaint against him. Contrary to policy, Plaintiff was never charged with a threat offense, and was immediately released after he told the Warden what had happened. Plaintiff's account is supported by his verified complaint and there is no contrary testimony by Vickers.

Plaintiff's next interaction with Vickers occurred on July 18, 2022. On that date, Defendant McAllister instructed Plaintiff to show him the broken television that Plaintiff had recently complained about in a grievance. McAllister conducted the investigation of Plaintiff's complaint at Inspector Vickers' request. McAllister made an initial statement suggesting that he would get Plaintiff a new TV if Plaintiff "[left] all this alone," in an effort to "bribe" Plaintiff into dropping his grievance about the damaged TV before stating that "Vickers wants to talk to you." (Doc. 37, PageID 289, 291).

The alleged "bribe" by McAllister cannot support Plaintiff's retaliation claim because it was not a threat of "adverse action." By contrast, Vickers' subsequent remarks to Plaintiff via a speakerphone are reasonably interpreted as a threat:

> Now you see all this stuff I'm doing for you? I've got you a T.V. Now I need you to do something for me. You gotta crawl under a rock, you gotta stop having your people calling (Pamela Piper). Columbus needs to stop calling me about you. And I need you to leave that failure to protect grievance, and the ICR you wrote on C/O Gillam and C/O Richardson alone.

(Doc. 7, PageID 82). When Plaintiff said "I can't do that sir," Vickers asked: "you want me to rewind all this and give you a hard time?" (*Id.*) Plaintiff then told Vickers "that he would appreciate it if he would respond to the grievance which was 40 days over[]due." (*Id.*) Vickers responded by telling McAllister, who was present during the call, "to send Plaintiff to segregation once more." (*Id.*) While Plaintiff was being processed into segregation,

-18-

Vickers appeared in person and stated: "You should've worked with me Broomfield. You're going to regret this." (*Id.*, PageID 83).

Defendants suggest that Vickers' threats - whether to give Plaintiff "a hard time" or words to the effect that Plaintiff was "going to regret this" are simply too vague to constitute the type of "adverse action" required to prove a retaliation claim. *See Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) (affirming grant of summary judgment based on the vagueness of the threat); *Shisler v. Goladay*, No. 2:19-cv-80, 2019 WL 2590693 *4 (W.D. Mich. June 25, 2019) (statement that ticket would be the least of the plaintiff's worries was "simply too vague" to support retaliation claim) (collecting cases).

The Sixth Circuit has held that the "adverse action" element of a retaliation claim "is not an overly difficult one for the plaintiff to meet." *Hill*, 630 F.3d at 472. "Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Id.* Unlike the cases cited by Defendants, Plaintiff offers strong circumstantial evidence to support the inference that Vickers' threats were specific and consequential. That evidence includes Vickers' actions ten days earlier when he instructed Bauer to transport Plaintiff to segregation based on an apparently false statement that Plaintiff had threatened him, without filing any formal charge. In their next interaction on July 18, Plaintiff was charged with a Conduct Report and taken to segregation *immediately* after Vickers threatened to give him "a hard time" if he refused to drop his grievances.

Not only did the Conduct Report and transport to segregation substantiate Vickers' threat, but Vickers' subsequent comments while Plaintiff was being processed add to the

strong inference of retaliatory animus. In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit reaffirmed that temporal proximity "alone" can support the element of motive in a First Amendment retaliation claim.

> This Court has "previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive." *King*, 680 F.3d at 695–96 (citations omitted); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) ("[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." (citation and internal quotation marks omitted) ). Indeed, Thelen issued the misconduct ticket *immediately* after Maben raised the issue of inadequate food portions and as Maben was trying to remedy the situation with the food supervisor.

*Id.*, 887 F.3d at 268.

Here, there is close temporal proximity between Plaintiff's protected conduct and Vickers' order directing Bauer to transport Plaintiff to segregation on July 8 based on an unsubstantiated report. The even more immediate temporal proximity between Vickers' verbal threat and the adverse actions carried out by McAllister on July 18 also supports the causal connection element. The evidence against McAllister includes his statement that Vickers wanted to speak with Plaintiff after McAllister's "bribe" failed, his bearing witness to Vickers' statements during a call that McAllister placed, followed by his compliance with Vickers' direction to return Plaintiff to segregation. Vickers' subsequent comments to Plaintiff that he would "regret" not being cooperative add to the already strong circumstantial evidence of Vickers' motivation.

To counteract the inference of retaliatory intent, both Defendants point to McAllister's statement that McAllister did not witness Vickers' statement that "if [Plaintiff] cooperated and dropped his grievances things would be easier for him." (Doc. 31-4, ¶8). But on summary judgment, a court does not resolve issues of credibility between

conflicting accounts of two witnesses. Therefore, the undersigned cannot credit McAllister's Declaration over the contrary allegations made in Plaintiff's verified complaint.

Next, Defendants suggest that this Court should grant summary judgment in their favor because Plaintiff does not deny he was guilty of the property offense with which he was charged on July 18. In Defendants' view, "Plaintiff was escorted to TPU [segregation] not because he refused to drop his grievances but because he was in possession of a television that did not belong to him." (Doc. 31, PageID 226). But Plaintiff need only establish that his protected conduct was a "motivating factor" in the Defendants' adverse actions against him.

> "The analysis of motive in retaliation claims is well-developed"—"[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." Id. [Thaddeaus X, 175 F.3d at 399] (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*. A defendant must make this showing by a preponderance of the evidence. *King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012).

*Maben*, 887 F.3d at 262. In *Maben*, the Sixth Circuit flatly rejected the premise that guilt on a misconduct charge defeats a retaliation claim. "Guilt of misconduct may be relevant… but it does not automatically bar a plaintiff's claim." *Id*.

On summary judgment, Plaintiff must show that a reasonable jury could find his protected conduct was a motivating factor behind Vickers' order to transport him to segregation on July 8, as well as the adverse actions taken by both Vickers and McAllister on July 18. The circumstantial evidence presented by Plaintiff satisfies that burden. Therefore, the burden shifts to Defendants to show that they would have taken the same action in the absence of Plaintiff's protected activity.

To make their requisite showing, Defendants double down on the evidence of Plaintiff's guilt. McAllister notes Plaintiff's written acknowledgment of the return of his property as undamaged on July 12, 2022, which supported his conclusion that Plaintiff falsely claimed his TV was damaged. (Doc. 31-4, ¶6). McAllister states that he learned during the investigation that the television in question belonged to another inmate, a violation of institutional rules. (Doc. 37-4, ¶7). McAllister's written report reflects those findings. (*See id*., PageID 262, Conduct Report stating in relevant part, "Inmate Broomfield lied to SOCF staff about his television and was in possession of property of another."). McAllister further attests that he informed Defendant Vickers of his findings, and that Vickers agreed with the disciplinary decision. (*Id*., ¶¶7-8).

But under the burden-shifting framework adopted in *Maben*, a simple denial of retaliation is not sufficient to show that a defendant would have taken the same adverse action in the absence of the protected conduct. *Maben*, 887 F.3d at 267. Technically, McAllister does not deny retaliation so much as assert that Plaintiff's guilt supports the discipline imposed. Regardless, a defendant must do more than simply show that the plaintiff committed misconduct to meet the "preponderance of evidence" standard.[14] *Id*., 887 F.3d at 261-63. Summary judgment is warranted only if, in light of the evidence viewed in favor of the plaintiff, no reasonable juror could fail to return a verdict for the defendant. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294-295 (6th Cir. 2012). "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift

---

[14]Arguably, a defendant could prevail if he produces evidence that no genuine issue of material fact exists that his motive to retaliate was 'insubstantial,' even if not entirely absent." *McCain v. Jackson*, No. 1:19-cv-234-TSB-SKB, 2020 WL 6075702, at *5 (S.D.Ohio, Oct. 15, 2020), R&R adopted 2021 WL 602676 (S.D. Ohio Feb. 16, 2021)

back to a plaintiff to show pretext in First Amendment retaliation claims." *Id.*, 702 F.3d at 295.

On the limited record presented, Defendants have not satisfied their burden to show they would have taken the same actions in the absence of Plaintiff's protected activity. *Accord*, *Edge v. Erdos*, 1:21-cv-532-JPH-SKB, 2023 WL 6170543, at *7 (S.D. Ohio Sept. 22, 2023) (denying summary judgment on retaliation claim), R&R adopted 2024 WL 1170033 (S.D. Ohio, March 18, 2024); *Cook v. Woodward*, Case No. 1:17-cv-532-TSB-SKB, 2019 WL 2352923 (S.D. Ohio June 4, 2019), R&R adopted 2019 WL 4010212 (S.D. Ohio Aug. 26, 2019) (same). Summary judgment must be denied because genuine issues of material fact remain. *See Marr v. Fields*, 420 Fed. Appx. 499 (6th Cir. 2011) (holding that fact issues precluded summary judgment where the defendant had failed to show she would have taken the same disciplinary action in the absence of Plaintiff's grievances, even though she had issued an "authorized" penalty for misconduct).

It is worth noting here that Plaintiff has never contested that he violated prison rules by "renting" the television from another inmate. But he does argue that the stated offense was selectively enforced against him and that the punishment meted out was unprecedented.[15] *See Houston v. Guinn*, No.: 18-10213, 2019 WL 7884620, at *6 (E.D. Mich. Oct. 31, 2019) (reasonable jury could believe that targeted discipline cast doubt on the defendant's assertion that he would have imposed the same discipline regardless of

---

[15]Plaintiff argues vigorously that McAllister punished him more harshly for having another inmate's property than other inmates charged with the same or similar offenses. (*See, e.g.*, Doc. 37, PageID 293, alleging that inmate whose screen was broken while he was renting his TV to Plaintiff was given a new TV in lieu of discipline; PageID 295, "any Sgt….will say that …going to the seg unit for a contraband TV that's not stolen is excessive…."; PageID 297, "close review of Sgt. McAllister's dispositions for contraband electronics will show he has never put anyone in [segregation] for petty hearing officer level contraband tickets.").

an inmate's protected activity). Plaintiff also disputes the timing of McAllister's "discovery" of the rule violation, pointing to Plaintiff's admissions of that violation in the July 2022 ICR that McAllister was investigating.[16] "A prisoner 'deserves the opportunity to try to show that the reasons given for disciplining him were a pretext for the prison officials' retaliatory animus.'" *Maben,* 887 F.3d at 263 (quoting *Orebaugh v. Caspari*, 910 F.2d 526, 529–30 (8th Cir. 1990) (Heaney, J., concurring in part and dissenting in part)). Defendants do not address Plaintiff's arguments in their reply.

### III.  Analysis of Plaintiff's Motion to Amend

Long after discovery had closed and Defendants' motion for summary judgment had been fully briefed, Plaintiff filed a motion seeking leave to file a second amended complaint. (Doc. 40). Plaintiff seeks to further amend his pleading in order to add new retaliation claims based on additional grievances he has filed. Defendants object to the proposed "amendment" on several grounds, including Plaintiff's failure to attach a copy of the newly proposed complaint. Defendants further object because it appears that Plaintiff seeks to add new parties as well as new claims. Defendants cite undue delay given that this case has been fully litigated through the pending motion for summary judgment. On this issue, Defendants' arguments are well taken.

### IV.  Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT:**

1.  Defendants' motion for summary judgment (Doc. 31) be **GRANTED IN PART and DENIED IN PART AS FOLLOWS**:

---

[16]Plaintiff asserts that in his July 2022 grievance, he clearly states that the damaged TV belonged to another inmate. (Doc. 37, PageID 291). Once again, however, the referenced ICR does not appear to have been filed of record.

a. The motion for summary judgment should be GRANTED as to all claims asserted against Defendants Davis, Bailey, Gillum, and Bauer;

b. The motion should be DENIED as to the Eighth Amendment claims asserted against Defendants Dotson and Hale, and the First Amendment claims asserted against Defendants McAllister and Vickers.

2. Plaintiff's motion to further amend his complaint (Doc. 40) should be DENIED.


*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KWENTEL BROOMFIELD,                                          Case No. 1:23-cv-108

        Plaintiff,

                                                   McFarland, J.

    v.                                                            Bowman, M.J.

CORRECTIONS OFFICER BAILEY, et al.,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-26-